OPINION
{¶ 1} The plaintiff-appellant, Daniel Keen, individually and on behalf of the estate of Helen Columber, appeals the April 11, 2003 judgment of the Common Pleas Court of Hardin County, Ohio, rendering judgment in favor of the appellees, Jeffrey Romig, M.D., and Hardin Memorial Hospital, based upon a jury verdict in their favor.
 {¶ 2} On October 8, 1998, Helen Columber, age seventy, went to the emergency room at Hardin Memorial Hospital, complaining of severe leg pain and chest pain. She was examined by Dr. Romig, who worked for a private company that contracted with the hospital to provide emergency room doctors. Dr. Romig ordered various tests for Helen, including a chemistry. The chemistry revealed that Helen's potassium level was far below the normal range, a condition called hypokalemia, and Dr. Romig attributed her leg pain to this problem. After consulting with Dr. Jeffrey Neuhauser, the physician on-call that day for Helen's primary physician, Dr. Romig then admitted her to the hospital for observation.
 {¶ 3} The following morning, Helen's legs were found to be cold, blue, and diaphoretic (moist). In addition, Helen could not move her legs, and no pulse could be palpitated in them. A Doppler ultrasound was ordered but no pulse was detected by this method either until Helen's bladder was emptied, and then a very weak pulse was found. She was quickly transported to St. Rita's Medical Center in Lima, Ohio, to be evaluated by a vascular surgeon, as none were available at Hardin Memorial.
 {¶ 4} After examining her, doctors at St. Rita's told her that she would have to undergo drastic surgery because she was suffering from aortic occlusion, which meant that blood was no longer flowing to her legs. Helen was further advised that this type of surgery could result in the amputation of both of her legs from high above her knees. Helen and her family elected to refrain from surgery and requested that no heroic measures be taken by the medical staff at St. Rita's. She remained at St. Rita's until her death four days later, on October 13, 1998.
 {¶ 5} One year later, Helen's son, Daniel Keen, filed a complaint in the Common Pleas Court of Hardin County on behalf of his mother's estate and himself, alleging medical malpractice. Among those named as defendants were Dr. Romig and Hardin Memorial Hospital. This complaint was later voluntarily dismissed by Keen. However, on January 23, 2001, Keen filed a second complaint. Once again, Dr. Romig and Hardin Memorial, inter alia, were named as defendants. All other defendants were eventually dismissed from the case for various reasons, and the case proceeded to a five-day jury trial from March 24-28, 2003, with only Dr. Romig and Hardin Memorial as defendants.
 {¶ 6} Keen's theory at trial as to liability was that Dr. Romig neglected to adequately treat and diagnose Helen while she was under his care in the emergency room. Specifically, experts for the plaintiff testified that a Doppler ultrasound would have detected an occlusion, which was the source of Helen's leg pain, and early detection would have resulted in a fairly simple procedure to alleviate the occlusion rather than Helen's death. As for Hardin Memorial, Keen contended that it was liable because its nurses and other staff did not provide adequate care for Helen in promptly detecting symptoms of occlusion. At the conclusion of the trial, the jury found in both defendants' favor. This appeal followed, and Keen now asserts one assignment of error.
The trial court erred in failing to instruct the jury regarding the lawof spoliation.
 {¶ 7} In his sole assignment of error, Keen maintains that the trial court erred by not providing various instructions to the jury as to the spoliation of evidence by Dr. Romig. This assertion is based on missing dictation from Dr. Romig regarding his examination and treatment of Helen. During discovery, Helen's medical chart was requested by counsel for Keen. Upon reviewing the chart, counsel discovered that the chart did not contain any dictation by Dr. Romig. However, Dr. Romig testified during his deposition and at trial that he remembered dictating Helen's medical history and his findings, which would have been placed in her chart after it was reduced to writing. Nevertheless, neither Hardin Memorial nor Dr. Romig could account for what happened to this dictation.
 {¶ 8} Because of the defendants' inability to account for the dictation, Keen filed a motion for sanctions for the spoliation of evidence prior to trial. In this motion, Keen requested that the trial court impose one of three possible sanctions. One possible sanction was for the court to instruct the jury that it could infer that the information contained in the dictation would be harmful to the defense due to the defendants' inability to produce this dictation. The second possible sanction requested by Keen was for a ruling in limine to preclude the defendants from offering any testimony as to the care and treatment provided in the emergency room because this was the information that would have been contained in the missing dictation. Lastly, Keen asserted that the trial court should impose the third possible sanction, which would be to create a rebuttable presumption of negligence by the defense. Keen also requested that the trial court instruct the jury as to punitive damages against Dr. Romig, based on his allegation that Dr. Romig intentionally falsified evidence to avoid liability. During the trial, the court denied both the motion for sanctions and the motion to instruct the jury regarding punitive damages. Keen now maintains that the trial court erred by not instructing the jury as to the spoliation of evidence and also erred by not providing an instruction as to punitive damages.
 {¶ 9} Our review of these issues begins by noting that, ordinarily, requested jury instructions should be given if they are correct statements of law, that are applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 Spoliation of Evidence {¶ 10} Spoliation of evidence has been recognized by the Ohio Supreme Court as an independent cause of action. Smith v. Howard JohnsonCo., Inc. (1993), 67 Ohio St.3d 28, 29. Included among the elements of such a claim is a showing that the defendant willfully destroyed evidence in an effort to disrupt the plaintiff's case. Id. Although spoliation constitutes a separate cause of action, an aggrieved party is not required to seek redress solely by instituting this type of claim. Rather, a court can impose sanctions on the spoliator. Such sanctions include permitting the jury to infer that such evidence would have been unfavorable to the spoliator, Banks v. Canton Hardware Co. (1952),156 Ohio St. 453, or creating a rebuttable presumption of negligence,Signs v. Ohio Dept. of Rehab. Corr. (Nov. 22, 1994), 10th Dist. No. 94 API05-628, 1994 WL 663454. However, sanctions must be just. Civ.R. 37(B).
 {¶ 11} Keen first argues that the trial court erred by not providing some type of instruction to the jury regarding the spoliation of the emergency room dictation of Dr. Romig. Keen bases this argument on one of three possible scenarios: (1) Dr. Romig violated procedure by failing to create this record; (2) if he did perform this dictation, Hardin Memorial failed in its duty to preserve this dictation; or (3) if the dictation was created but the dictation company neglected to return the dictated record to the hospital, Hardin Memorial failed in its duty to inform Dr. Romig that the dictation was missing. Thus, Keen asserts that, at a minimum, the trial court should have instructed the jury that it could infer that the information contained in the medical record would be harmful to the defense.
 {¶ 12} In support of his assertion, Keen relies largely uponCherovsky v. St. Luke's Hosp. of Cleveland (Dec. 14, 1995), 8th Dist. No. 68326, 1995 WL 739608. In Cherovsky, the plaintiff filed suit against various doctors and a hospital for medical malpractice for improperly removing her lung based upon a misdiagnosis of cancer. Id. The plaintiff later amended her complaint to assert a claim for spoliation of evidence based on four missing biopsy slides and related tissue blocks. Id. Although the defendants could not account for these missing slides, all parties acknowledged that these slides were in existence at one time and that there were several possible scenarios to explain the disappearance of these slides, none of which involved malfeasance on the part of the defendants. Id. However, because the defendants could not produce these slides, the plaintiff requested that the trial court instruct the jury that it could infer that the evidence was unfavorable to the defendant. Id. This instruction is quite similar to that requested by Keen in the case sub judice.
 {¶ 13} In discussing the issue of spoliation of evidence, the Eighth District Court of Appeals reviewed several cases, including both Ohio and federal cases. Notably, Cherovsky and the cases referenced therein involved situations where the existence of the evidence at issue was conceded. See, e.g., id.; Banks, supra; Sullivan v. Gen. MotorsCorp. (N.D. Ohio 1991), 772 F. Supp. 358, 364; Temple v. CCC Highway,Inc. (Mar. 28, 1991), 8th Dist. Nos. 58402, 58404, 1991 WL 41751;Signs, supra. Further, the evidence at issue in these cases was somehow lost, altered, or destroyed by the party who had control of the evidence. Such is not the case here.
 {¶ 14} The only evidence that Keen could produce to show that the emergency room dictation ever existed was Dr. Romig's testimony that he remembered calling the out-of-state company that serviced the hospital for dictation purposes and dictating to its service. However, other evidence contradicted this testimony. When confronted with charts of all other patients to whom he provided care at Hardin Memorial's emergency room, Dr. Romig acknowledged that he placed the letter "D" in a circle on each chart for which he did dictation and that he followed this "D" with the date on which he dictated his notes. Although all of the charts with this identifying notation contained Dr. Romig's dictation, Helen's chart did not have Dr. Romig's identifying notation on it, and it did not contain any dictation. In addition, one other chart of another patient of Dr. Romig's, which also lacked a "D" or a date written by him, was also admitted. Like Helen's, this chart also did not contain any dictation from Dr. Romig.
 {¶ 15} In sum, all charts containing Dr. Romig's dictation were also labeled by him with the letter "D" and the date the dictation was done, whereas the two charts, one of which was Helen's, that lacked his dictation were not labeled with this identifying notation. Thus, the vast documentary evidence demonstrated that Dr. Romig never dictated his notes regarding his treatment of Helen in the emergency room that day. Moreover, no evidence from the dictation service that would show whether he dictated his notes was presented to the jury, and representatives from Hardin Memorial testified that no such dictation was ever located by the hospital. In short, no evidence, testimonial or otherwise, indicated that this dictation, if performed by Dr. Romig, was ever transferred to written or recorded form and subsequently lost or destroyed.
 {¶ 16} Non-existent evidence, by its very nature, cannot be spoiled. See Pratt v. Payne, 153 Ohio App.3d 450, 2003-Ohio-3777, at ¶ 21. Rather, sanctions and causes of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later do not provide this evidence and do not provide an adequate explanation for failing to do so. See Hubbard v. Cleveland,Columbus Cincinnati Hwy, Inc. (1947), 81 Ohio App. 445, 451. Given the aforementioned evidence before the trial court, it did not abuse its discretion in refusing to provide the instructions regarding spoliation requested by Keen. Furthermore, no evidence was provided that Dr. Romig and Hardin Memorial were guilty of any wrongdoing or misconduct by intentionally disposing of the dictation. Without any evidence of the dictation's existence or of malfeasance on the part of the defendants, the trial court did not err in failing to give the requested instructions.
 {¶ 17} Last, the trial court did provide the jury with a general instruction on inferences, which provided counsel for Keen leeway to address the negative inferences from the missing dictation. Thus, the jury was permitted, but not required, to infer that the missing dictation was unfavorable. The lack of this dictation was repeatedly addressed throughout the trial by counsel for Keen, which eliminated any prejudice a failure to instruct on this specific issue may have caused. Moreover, the lack of the presence of this dictation in light of Dr. Romig's testimony that he dictated his notes gave counsel for Keen the opportunity to demonstrate to the jury that the doctor was not credible, a quality important to the jury's determination as to whether he committed medical malpractice in his care of Helen Thus, the assignment of error is overruled as to the issue of spoliation of evidence.
 Punitive Damages {¶ 18} Keen next asserts that an instruction as to punitive damages should have been given to the jury because Dr. Romig created a false medical record during his testimony. This assertion is based on the following testimony. During the trial, Dr. Romig testified that Helen's legs were warm and dry, she could move them, and that they were not numb. To the contrary, Helen's granddaughter, Amy Wireman, who had recently become a nurse prior to Helen's death, testified that Helen's legs were cold, that Helen could not move them, and that Helen's legs were numb while she was in the emergency room under Dr. Romig's care.
Because of this conflicting testimony, Keen contends that Dr. Romig created a false medical record through his testimony at trial, which provided sufficient evidence to warrant an instruction as to punitive damages. We disagree.
 {¶ 19} The Ohio Supreme Court has determined that spoliation of evidence may be the basis of an award of punitive damages in an underlying medical malpractice action. Moskovitz v. Mt. Sinai Med. Ctr.
(1994), 69 Ohio St.3d 638, paragraph one of the syllabus. However, such an award may only be made "upon a showing of `actual malice[.]'" Id. In determining what constitutes "actual malice" in a medical malpractice action, the Court has held that "[a]n intentional alteration, falsification or destruction of medical records by a doctor, to avoid liability for his or her medical negligence, is sufficient to show actual malice[.]" Id. at 653, citing Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus.
 {¶ 20} As previously noted, the record is devoid of any evidence that Dr. Romig intentionally altered, falsified, or destroyed any medicalrecords created prior to the initiation of the current litigation, a fact that Keen conceded in his motion for sanctions. Rather, Keen describes Dr. Romig's testimony at trial as creating a false medical record. However, this Court has been unable to locate any authority for Keen's proposition that Dr. Romig's testimony at the trial constituted a false medical record. In fact, in examining case law surrounding spoliation of evidence, the various cases have all involved the withholding, alteration, falsification, or destruction of physical evidence rather than providing false testimonial evidence. See, e.g., Hampton v. St.Michael Hosp., 8th Dist. No. 81009, 2003-Ohio-1828, 2003 WL 1848772, at ¶ 52,; Drawl v. Cornicelli (1997), 124 Ohio App.3d 562, 568; andMoskovitz, 69 Ohio St.3d at 650 (alteration of medical records); Merosv. Mazgaj (Apr. 30, 2002), 11th Dist. No. 2001-T-0100, 2002 WL 819219 (destruction of contingent fee agreement); McGuire v. Draper, Hollenbaugh Briscoe Co., L.P.A., 4th Dist. No. 01CA21, 2002-Ohio-6170, 2002 WL 31521750, at ¶ 77 (destruction of client file); White v. Ford MotorCo. (2001), 142 Ohio App.3d 384, 386-387 (destruction of car);Carnahanv. Buckley (Mar. 28, 2001), 7th Dist. No. 99 CA 323, 2001 WL 315316 (lack of preoperative photographs when evidence conclusively determined they were taken); Matyok v. Moore (Sept. 1, 2000), 6th Dist. No. L-00-1077, 2000 WL 1232417 (disposal of cracked staircase); Williamson v. Rodenberg
(June 30, 1997), 10th Dist. No. 96APE10-1395, 1997 WL 360840 (destruction of behavioral interviewing materials); Cechowski v. Goodwill Industriesof Akron, Ohio, Inc. (May 14, 1997), 9th Dist. No. 17944, 1997 WL 270523 (destruction of documents); Sheets v. Norfolk S. Corp. (1996),109 Ohio App.3d 278, 288-289 (destruction of dispatcher tapes); Websterv. Toledo Edison Co. (Nov. 1, 1996), 6th Dist. No. L-95-342, 1996 WL 629486 (destruction of broken tire studs); Cherovsky, supra (missing pathology slides); and Tittle v. Rent-A-Wreck (Sept. 24, 1993), 7th Dist. No. 92-B-51, 1993 WL 373842 (missing car parts).
 {¶ 21} As previously noted, the trial court was only required to provide the jury with instructions that were applicable to the facts in the case. See Murphy, 61 Ohio St.3d at 591. Given the lack of any evidence that Dr. Romig altered, falsified, or destroyed physical evidence relevant to this case, the trial court did not abuse its discretion in refusing to instruct the jury as to punitive damages. Moreover, punitive damages may only be awarded in cases "involving medical malpractice where liability is determined and compensatory damages are awarded[.]" Moskovitz, 69 Ohio St.3d at paragraph one of the syllabus. Dr. Romig was absolved of any liability and compensatory damages were not awarded to Keen. Thus, even if the trial court erred in not instructing the jury as to punitive damages, such error was harmless as no underlying liability existed. Accordingly, the assignment of error is also overruled as to the issue of punitive damages.
 {¶ 22} For these reasons, the judgment of the Common Pleas Court of Hardin County, Ohio, is affirmed.
Judgment affirmed.
Walters and Cupp, JJ., concur.